We have a busy morning today. We have four cases set for argument this morning. The first case is Personalized Media v. Apple, 18-1936. Mr. Jay, you reserve four minutes for rebuttal. Is that correct? That's correct, Your Honor. Thank you. All right. You may proceed, sir. Thank you. Good morning, Your Honors. May it please the Court. William Jay from Goodwin Proctor for Appellant PMC. In this patent, decryption requires digital information. PMC made that clear in the claim language, in an explicit claim amendment, in fact, adding the word digital. PMC made that clear in the specification, and PMC made that triply clear in the prosecution history, three separate times and three separate statements to the PTO during prosecution, disclaiming analog and, in particular, disclaiming any suggestion that descrambling was part of decrypting. The Board rejected our construction, and the Board gave a number of reasons responding to the points that I've just alluded to, but they really all boil down to two foundational things in the Board's view that the Board came back to again and again. One is the prepositional phrase at the beginning of the claim language referring to including encrypted information, and the other is a statement in the specification, which I'd like to come to as well. But let me begin, in particular, with in the first step of Claim 13, including encrypted information. And the Board said that this shows that although the claim language begins with receiving an encrypted digital information transmission, that because the patent then goes on to use this different phrase, encrypted information, that therefore a digital information transmission must be able to include non-digital information as well because that word digital is not repeated in the second phrase. That statement doesn't exclude, doesn't expressly exclude analog information, does it? The beginning of the claim does, Your Honor, so receiving an encrypted digital information transmission, so that in order to be a digital information transmission, it has to be digital. It can't be analog. In full? Yes, in full. And I think that that's actually made clear by this prepositional phrase. So it does not have to be all encrypted. That is what this prepositional phrase is doing. It must include encrypted information. It may not just include digital information. It must be digital information. Does there remain a dispute between the parties here in this Court about whether that opening phrase requires the whole transmission to be digital? So the PTAB asked that question at the hearing, what our position was. I think we made clear, this is not in the appendix, but it's at page 39 of the transcript of the oral hearing, which is in the record, that that was our construction of it. So I do think that there is a dispute between the parties for purposes of this IPR. And the Board certainly made clear that it disagreed with PMC's construction and came back to it again and again by saying that the including encrypted information phrase showed that it need not be all digital, both in the claim construction section and then again in its discussion of anticipation. It kept coming back to the idea that decrypting need not be an all-digital transmission. Can I ask you, so as I think I understand what you have said, when it says including encrypted information, what that suggests is that maybe some of the digital information isn't encrypted. Precisely, Your Honor. As we said in our reply brief, the word including is doing no work in the Board's construction and it is doing work in our construction. We think it's doing critical work because including encrypted information shows that this is a subset. You have to show here that the Board's construction is unreasonable, right? Or that it's not consistent with the specification. Is that? I'm thinking about broadest reasonable interpretation. Oh, I see what you mean. And that one way to look at it is, at least, it's supposed to be the broadest, but it also has to be reasonable and it also has to be consistent with the specification, right? Do you agree that that's what you've got to show here? It has to be, right, that their construction can't be the broadest reasonable construction and ours must be, but as your question said correctly. And it's your position that their construction is not reasonable, right? Precisely because it's not consistent with either the claim language or the specification or the prosecution history and I think that, just to add to your question, the prosecution history, including the disclaimers, are a critical part of this. And so a construction that says, as the Board did here, that it was going to disregard the disclaimers because that would narrow improperly the scope of the claims, that's not applying the BRI standard. What work, in your view, is the first use of encrypted doing in this phrase, the opening phrase of the body of 13? So the first use of encrypted meaning in receiving an encrypted digital information transmission. Exactly. So I take the point that including encrypted information would do some of the same work, in other words, that that would... I guess my question is, why wouldn't it do all of the work? And I'm not suggesting this is dispositive, but we have a language question, we have a spec question, we have a prosecution history question, we've so far been talking about the language, and the language originated in a kind of belt and suspenders way. So you have an explanation, but just on the text. I think just on the text, if this had been what it said all along, we might have a surplusage argument, but I think as your last question alluded to, these two words, encrypted digital, the encrypted digital information transmission, two words were added during prosecution as a belt and suspenders way of ensuring to the examiner's satisfaction. And just as a textual matter, I guess I'm not hearing an explanation of how this claim language would be any different if that first word encrypted were taken out, or even perhaps the digital taken out, although at least the first, that does give you a textual, something quasi-determinative about the digital nature of the whole transmission. Precisely, and I think that because of the way that the principle phrase and then the modifying phrase work together, that in some ways the second does take away some of what the first would otherwise do. So the first phrase specifies that you need encryption, and you need digital, and you need the other elements as well, you need information that is transmitted. And then the second phrase specifies that the encryption can be partial, it must include encrypted information. It's maybe not the most artful way of giving effect, but as we've just been discussing, because it was done in this belt and suspenders way to ensure that digital was going to be a limitation. And Claim 26 encompasses a transmission that has both analog and digital in it, but the including encrypted, you say, is still only digital. That's right. That's right. And so for Claim 26, we would need to look just to the disclaimers rather than in addition to the claim amendment. We don't have a claim amendment in Claim 26. So for Claim 26, you're relying on the specifications description of encryption to suggest that it could be digital only. I think you've got that argument in there. Correct. And then also you've got some prosecution history from the two, the first two responses to the office actions are before the amendment to add digital, there was prosecution history statements there. Those are the things you're relying on? And then in conjunction with the amendment, there is an explanatory statement that doesn't just explain the amendment, it explains PMC's position writ large that decryption does not include analog and specifically does not include de-scrambling. So yes, it's all of those things. And you're saying it's preserved in the third response, that encryption point, you've preserved it in your remarks in the third response that was filed in December of 2011. I believe that that's right, which is the... In distinguishing Mason. Yes, which I believe is at 11, no that's not right, it's at 23-12-13 of the appendix. And then, so the other thing that the board relied on actually goes to the specification and one of the reasons that, as your question alluded to, we do say that the specification also explains that decrypting means digital. And the board said... So what's your response to that passage that the board was relying on? Right, our response to that passage begins with the first sentence of that passage, which I'd like to take the court to. So appendix 1099, column 159, if I could I'd like to ask the court to start at, I guess it's line 46, which is the beginning of a paragraph that says it is obvious to one of ordinary skill in the art. And there, the example 7 has concluded and the specification is explaining ways in which example 7 might be modified. And then there are a number of examples. The third example, which begins at line 57, is the line to which your question, Judge Stoll, alluded and that the board relied on. It says that the Wall Street Week transmission may be of conventional analog television, meaning instead of the digital television that example 7 has made very clear is the transmission at issue in the embodiment. And then, so if that's true, then the decryptors may be conventional descramblers. We do not read that as saying that decryptors may be descramblers as a matter of the lexicography of this patent. We read that as saying that just as the digital transmission that we just told you about, and I believe it's column 148, the beginning of example 7, may instead be analog, the decryptors that we've told you about may be substituted for descramblers. I was just going to say that thinking about broadest reasonable construction again and thinking about whether the board's position is reasonable or whether you were acting as a lexicographer in your patent, you know, there are other sections of your patent where you more expressly say this term means such and such. Like, for example, the term programming refers to, and then there's an express definition. I don't see something of the same express lexicography in your specification. And then you also have this passage here that we've just been talking about, which in all to me detracts from the idea that you were your own lexicographer. And I just want to give you an opportunity to respond to that. Sure. And to be clear, we think that even if you disagreed with our lexicography argument, we still think that we would win based on the claim language, based on the preponderance of the usage in the specification, because we don't think this detracts from it, and the express statements during prosecution history. So in other words, even if you didn't think we'd expressly said, and now I'm being a lexicographer, that I think we would still prevail because of the reasons that I've just given you for distinguishing 159. How do you treat that in each one of these claims that we're talking about? It starts off by addressing programming, and programming has been expressly defined as all electronic information. I would assume that that means both digital and analog. It does, Your Honor, but that doesn't change the meaning of decrypting, and this is a point that we made in our reply brief, and it really is just the flip side of the board's argument about... But it lends support, doesn't it, to the reasonableness of the board's finding? I don't think so, Your Honor, because what we're talking about is a limitation on decrypting. We're not talking about, for example, a complete mismatch between decrypting and programming. So we know that the thing that has to be decrypted is programming. So if we were advocating for a definition that didn't fit with programming at all, okay, I could see that point. But the analogy that we gave in our brief is that if we talked about winding a watch, a watch can be analog, a watch can be digital, but only one kind of watch can be wound, and the fact that it's winding a watch wouldn't change the meaning of the word winding. And I would just add to that the fact that the programming appears in the preamble. The preamble is not limiting, and what the court should be looking to is really the first step in the method. Because the first step in the method, the encrypted digital information transmission, all of the information that is then alluded to later in the steps of the method, it all goes back to that, because the information has to be included in that encrypted digital information transmission. For the reasons I've given before, that has to be digital. No other information comes in that is not included within that transmission. Okay. You're into your rebuttal time. I'll restore some of your time, okay? Thank you, Your Honor. Thank you. Counselor Cernel. Good morning. May it please the court, Mark Cernel on behalf of Apple. Two issues in the case. Most of the questions were on encryption-decryption, so I'd like to start there. I'd like to first frame the question here in terms of the construction of encryption-decryption and remind you that what PMC is arguing here is that the broadest reasonable interpretation of encryption and decryption somehow excludes prior art, nearly contemporaneous prior art, just a few years before. Prior art that is describing systems that uses the exact terms encryption and decryption to describe the processes disclosed therein. The Gilhausen, which starts at Appendix 1164. Do you mind if I just direct you? I have a couple questions that I want to make sure I ask you about. I'm interested in some of the argument that was made at page A2312. This is the prosecution history, and I think that there's pretty strong evidence here that would support the view, not necessarily that encryption is limited to digital, but that the language, digital information transmission, I might have that wrong, encrypted digital information transmission, that that is limited to entire digital. So I'm looking at the last full paragraph on page 2312, and it does seem to say that it does not teach the encryption of entire digital signal transmission. I'd like to get your response to that. So, first of all, I think we're in the prosecution history, so we're in the world of arguing for a clear and unmistakable disclaimer. Are we? Not necessarily. I think they've... Well, I'm sorry, I don't think I've ever seen a say that you need to meet a clear and unmistakable disavowal disclaimer standard when using the prosecution history not to overcome an otherwise clear meaning of the language or the spec, but merely to enable you to understand which of several possible meanings. And I apologize, but if I could just address that foundational piece of this. I believe there is a common ordinary meaning that was the starting point. As I was pointing out, the prior art we're talking about here that was found to anticipate by the board used the terms encryption, decryption to refer to systems that were processing, at least in part, analog information. So that was the common usage at the time, and so I would suggest that the only way the prosecution history is going to help PMC get to where they need to be is with respect to a clear and unmistakable disclaimer. Did the board find that that was the plain meaning? I thought that the board said there was no plain meaning. The board said that the meanings were in flux. I think we're in a situation kind of like in Ray Paulson, where in that case there was a question of what the term computer meant. And it said, well, there's no rigid and fixed meaning of computer, but there's sort of a core understanding that it's a device that engages in calculations. And the question was, because there were more sophisticated computers described in the specification, is that the meaning of computer we're going to use? And so in Ray Paulson they said, no, there's a core meaning that it means at least this. I understand what you're saying, but I'm just kind of going back to did the board find that? Because I don't think the board found that. I think the board did find that the common meaning, and this is Appendix 32, the common meaning understood at the time was that it was something used to decipher, to scramble, etc. using a key algorithm or other digital information. And so that was sort of the core understanding. And then the question is, is it exclusively digital, as PMC argues, or can it include analog components? And so with that context, I think we look at the prosecution history. And what they're arguing here are essentially claim construction type arguments. Clearly they're trying to argue that the claim construction of encryption and decryption should require a digital signal. And I'm going to get back to that in a minute as to even if there was a disclaimer, what that disclaimer might be. They're making that argument, but then clearly here in the December 2011 prosecution history back and forth, they're pivoting from that and saying, well, we acknowledge that it can be argued that Mason teaches encrypted elements. And so the question here is, is the term encryption decryption, the issue that is being raised here is do those terms exclusively require an exclusive digital process with only digital information? Just above that, in the paragraph above, they say it's their view that encryption is limited to digital. So how is it unreasonable for me to read that sentence and think that when they then use that word, encrypted, they mean digital? So if you look at the bottom sentence on Appendix 2312, what they're arguing is this amendment in no way affects, so they're amending the claims, they're adding limitations that ultimately gained allowance. But they're saying applicants position that encryption requires a digital signal. Let's talk about what that even means. So your view is that this sentence that says Mason teaches encrypted elements as part of its analog information transmission is not saying that Mason is hybrid. I believe Mason certainly has digital elements. The point here is, even if we were to get in the world of thinking there might be a disclaimer, what the position they've taken and the position that's stated here is encryption requires a digital signal. That doesn't necessarily require exclusively digital, excluding all of analog. There's no clear and unmistakable statement here that says this has to be an exclusively digital transmission. What about the word entire? Where do you see that? The next sentence, but it does not teach the encryption of an entire digital signal transmission. Signs up from the bottom of 2312. So I guess let me take a step back. When we're now talking about the phrase in the claim, receiving encrypted digital information transmission including encrypted information, that's something the board has adopted a claim construction. It was challenged on rehearing by PMC, and they've not challenged it here. So we have a construction of that phrase that is binding on this court. They've waived the ability to argue about that. We're simply now arguing about encrypted and decrypted separate and apart from that phrase. The board found with respect to, and this is Appendix 21, an encrypted digital information transmission including encrypted information includes at least some encrypted digital information and does not preclude with that transmission non-encrypted information or scrambled analog information. So we're not looking at that entire phrase on the issue that PMC's raised here on appeal. We're simply looking at encryption and decryption, and with respect to those phrases, at most we can glean from the prosecution history that it requires a digital signal. Now let's think about what the board found in terms of encryption decryption. Again, there's two questions with respect to what needs to be digital. One, sort of the payload, the digital information, the content, the programming. And then secondly, you have potentially an algorithm key or other digital information. On that second piece, the board did read in a digital requirement, and all of the prior art that the board relied upon has that digital key as part of it. The question is, does the programming, the content, the information need to be exclusively digital or not? And nothing in the prosecution history, even if you find that there may be something that moves towards a disclaimer, suggests that an exclusively digital information transmission with everything being digital, excluding analog. Okay. And so, Judge Taranto had questions about the claim language. I think the claim language as we walk through this case is really the hierarchy of intrinsic evidence fully supports what the board found here as well. Where we have this concept of an encrypted digital information transmission including encrypted information. I think all you need to do is look at Phillips. Not only Phillips in terms of its teachings with respect to the canons of claim construction, but also the specific facts of Phillips. Where Phillips had the situation of steel baffles. And the Phillips and Bancourt explain that the fact that you use the word steel to describe baffles strongly implied that the term baffles does not inherently mean objects of steel. Similarly here, where you have the concept of encrypted information or encrypted digital information, that strongly implies, based on the claim language, that not all encrypted information is digital. And they need that to be the case in order for their position to prevail here. Also, as Judge Reyna pointed out, this concept that we have decrypting programming. Again, programming is defined very, very broadly in the specification. And it certainly includes analog transmissions and analog programming. And the fact that we're decrypting programming, I think, is also strong context support for the board's finding here. Can I ask you something very specific? On page 9 of your red brief, you're describing the background of Wall Street Week in particular and saying the programming that is decrypted using the embedded signals is often standard 1980s analog television or radio programming, for example. Example 7, 107, decrypts the audio portion of Wall Street Week and 224 decrypts the video portion. And the first site to column 151 is the audio portion, 107. And the second is column 153, the 224, which expressly describes in expressed terms the video portion there is all digital. The words are, 224 receives the information of said video portion, said information being encrypted digital video. So this does not suggest that at least example 7 is in any way decrypting analog video. So there's two answers to that. The second one, I'll point to other parts of the specification where clearly analog is being decrypted. But not the part describing the background. This part, actually, I think it's important to remember that what we're talking about here is 1980s era technology and discussion of the technology. And so when we're talking about digital video and digital audio, and the board made a finding on this, this is appendix 16 footnote 7, quoting Apple's expert at appendix 843, 844, that a person of ordinary skill in the art in 1981 or 1987 would have considered, quote, digital television, quote, digital video, or quote, digital programming to be fundamentally comprised of an analog video signal that contained embedded digital content. And so the point here is that you have, you're potentially going to have analog pieces of something that's being referred to in shorthand as digital video or digital audio. You can see at column 148 they even use the phrase so-called digital video or digital audio. Again, this is the 1980s. Now, I would separately point out that even if you look at every reference to digital in the specification and conclude that it's an exclusively digital transmission, there are also other pieces. You talked about it with Council. Column 159 very clearly talks about the decryptors 107, 224, and 231 may be conventional descramblers well known in the art that descramble analog television transmissions. I would point to another example if you look at column 160. It talks about videotape recorders that transmit a transmission of conventional re-recorded programming that has been encrypted. This is about lines 18 through 20. And it talks about decryption of that encrypted programming from a videotape recorder. I understand your point to be that the vast majority of the specification when it's talking about digital is talking about hybrid systems in which there's analog and digital. That's correct. And I believe there's also just straight analog discussion as well. Can I ask you about location for a few more minutes? Sure. I looked through the specification for the term locating and locate and I was wondering in most of the instances I saw locate seems to mean find, not place. As in find my phone, not locate my business. Instead locate my phone. Find versus place. Are you aware of any instance in the specification where locating or locate is used to mean place as opposed to find? I know it's a long specification but I wanted to give you an opportunity if you had an example to provide one. I've got a few examples. There's a lot of complexity here and one of them is at the top of column 62 where locate is being used where they talk about locating information and then it lays out over multiple paragraphs how you have to find multiple fields and effectively it's a multi-step process taking multiple pieces of information, putting them together to then locate this information that's talked about column 62, line 3 is sort of the original information that's found. My example here, I think it's effectively just sort of summarizing everything that's going on here. What you're having to do is find multiple pieces of information, compare them make determinations and then you cobble together information to find this information that's being located, which I think is supportive of the board's construction of locating, finding that information. What exactly was it? Remind me. What did the board say the construction was? The board said the construction was to determine or indicate the place, site, or limits of. And so you're finding information and so ultimately PMC doesn't even challenge the board's construction. Their reply brief at 23 I believe it is. They acknowledge that that is the plain meaning. What ultimately we then are disputing is this additional requirement where they basically say you need to use what you locate in exactly the form in which you locate it to then decrypt. And so that's the argument. And so they're trying to exclude the ability to find the information. Let me just ask you about that. I couldn't quite tell whether what you make of what you say is the real dispute, which doesn't actually appear to be a dispute between the terminology the board adopted and the terminology they're suggesting. And so I was left uncertain about whether we can decide how much let's call it manipulation can be used and still be part of the process of locating. Assuming as I guess I am assuming because I don't understand how one could not assume that this is all about finding and not placing. It's not about deciding where to put something. It's about getting it. And then the question is what work is involved in getting. But I kind of thought that the board didn't ever really get to that question but thought that deciding where to place was part of the construction, which seems just inapposite to everything that's going on here. I agree it's confused and I agree that PMC's arguments are confusing too. I don't think their arguments are confusing. I don't see a well-developed debate about what kinds of manipulations would be permissible for locating. They say translating from Cyrillic to Latin alphabet, that's fine. But computing, taking one piece of information another piece of information putting them together through some calculation that is not. But I don't really see the engagement on that in the board's decision. That's what I'm genuinely confused about. And there's a dependent claim that says computing a key and that's one of the arguments that they make. I would argue that computing doesn't exclude there also being some computing as part of locating the key. It may be a question of how much. Add three to every character. I suppose computing would presumably be roughly the equivalent or actually the equivalent of simply translating. Ultimately I think the easy answer is all of this is academic anyway because the board has found even under PMC's construction that the Gilhausen reference, I believe this is in 81 and 82 of the appendix concludes that Gilhausen does find the key that's already in existence. And it's taking information that's transmitted and reproducing the key stream that already existed on the subscriber or on the transmitter side of the apparatus. Let's stop at that point. I think you're well over your time. Thank you for the argument. Councillor Jay, I'm going to restore you back to three minutes. Thank you very much. I'm going to use ten seconds of it. Are we bound by what the board said by way of construction of the longer phrase encrypted digital information transmission, which you don't seem either at all or quite to have appealed? We did not sort of break it out as a separate Roman numeral, but I guess I would point you to page 17 of the appendix in which the board itself says that the two constructions are interrelated and incorporates its analysis of the issue that we have appealed into its analysis of the longer phrase. And so we did not break it out as a separate, even if you disagree with us about decrypting, you should have a separate discussion about this. But we do think that they are bound up together. And one of the reasons that the board's first method step is wrong is because its misunderstanding goes back to that first step as well. So I think it's fair to say that we did not separately appeal it, but we certainly have disputed it all along and the board itself acknowledges that they are closely interrelated. So let's go back to a prior question that I had. If the inventor meant to only claim digital information, then why is the word programming included in all the different claims? I mean, why was programming not the word that was redefined? Well, respectfully, Your Honor, programming is only in the preamble. And so I don't think it was necessary to do that. Is it really? Of each claim? Is it in the last limitation of the claim? I guess that's right. And I apologize. What I should have said is it is not what the operation that is discussed in the method is doing. So at the very end, the programming is outputted after the encryption and decryption have been done in the first through question step. So wouldn't it have been easier just to redefine programming to exclude analog information or to include just digital information? That would have been a way to do it, but I think the question is from what would a member of the text of the claim, the specification, and the file history conclude? And that might have been a way to do it, but it certainly is not the only way to do it, especially because what you have here is a quite unambiguous statement in the third of the three file history excerpts, the one with the amendment in it, in which it's being added in that first method step rather than in the preamble. If programming were redefined in the spec, then you would lose the greater breadth of Claim 26, which clearly covers a transmission that includes Louis Rukeyser in non-digital with some little bits of digital information stuffed in. That's fair, and I apologize. My answer was focused on the first claim, which we've been discussing, but what you say is correct, O'Sharonta, that that would have effects on other claims and it wasn't even necessary. You just redefined programming for each one of your claims as you need, just to make sure that there's no misunderstanding where analog information is included and where it's excluded. And that brings me exactly to a point that I wanted to make in this rebuttal, responding to something that my friend on the other side said, that all the dispute about what other pieces of art said or even what other pieces of the specification said, of course, this is a specification from which many people have used this claim language in this patent with this file history. So in addition to the digital amendment, even if there were no digital amendment, you'd still have the lexicography in the specification. And even if you didn't have that for this specific file history, you'd still have the three statements saying we don't intend to claim analog and we especially don't intend to claim descrambling. Okay. I think we have your argument. Thank you very much. Our next case is In Re Amp A-A-A-A-A-A-A-A-A-A-M-P